**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PETER PAPPAS, ET AL.,** | ) | **CASE NO.1:18CV1514** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **JOHN G. MEDAS, ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiffs' Motion to Appoint a Receiver. (ECF # 8). For the following reasons, the Court denies Plaintiffs' Motion.

On July 3, 2018, Plaintiff Peter Pappas and his minor daughter E.P. filed their Complaint in this Court alleging Breach of Fiduciary Duty under the Employment Retirement Income Security Act ("ERISA"), Civil RICO under 18 U.S.C. § 1964, Retaliation in violation of the Fair Labor Standards Act ("FLSA") and Ohio law, Failure to Pay Timely Wages under Ohio law, Ohio Corrupt Practices Act violation, Civil Conspiracy under Ohio law, Intentional Infliction of Emotional Distress, Fraud and Conversion in violation of Ohio law, Breach of Implied Contract, Promissory Estoppel and Unjust Enrichment against Defendants.

**Factual Allegations**

According to Plaintiffs' Complaint, Plaintiff Peter Pappas became general manager of Defendant Fulton Manufacturing Industries, LLC in 2004 and later served as general manager for the other related Defendant companies. As general manager, Pappas reported to Defendant John G. Medas. During his employment, Pappas was covered under Defendants' group health insurance. The health plan required employees to pay a portion of their health insurance premiums. Defendants withheld the employee-owed health insurance premiums from employee paychecks. Medas and FMI Companies were responsible for sending the health insurance premiums to the health insurance provider. Sometime in 2016, Defendants stopped sending the premium payments to the insurance provider but continued withholding the premiums from employee paychecks.

Plaintiff E.P. is Peter Pappas' minor daughter who was insured under the FMI health insurance plan. E.P. suffers from severe and progressive scoliosis and in 2016 required surgery on her spine. Her surgery was scheduled for October 2016 but in September 2016 Pappas discovered his health insurance had been cancelled because Defendants stopped paying the premiums. As a result E.P.'s surgery was delayed until 2017.

In 2017, Defendants fell behind in paying their employees. When Pappas complained, Medas fired him.

**Motion to Appoint Receiver**

On September 28, 2018, Plaintiffs filed a Motion to Appoint a Receiver to manage Defendants' assets which Plaintiffs contend is necessary to preserve the assets in order to satisfy the potential judgment in this case. According to Plaintiffs, Defendants have debts of approximately $2 million owed to several creditors and are facing tax liens and foreclosure

actions. Defendants are attempting to sell assets and are the subject of an IRS criminal investigation. A receiver has previously been appointed over some of these Defendants earlier this year. In the state court litigation, Medas admitted owing Pappas backpay and further admitted FMI failed to pay insurance premiums for Pappas and his family. Now Defendants are attempting to sell assets and property which Plaintiff contends must be preserved in order to satisfy any potential judgment in this case.

### **Law and Analysis**

"The general rule is that a receiver will not be appointed unless it appears that the appointment is necessary either to prevent fraud or to save the property from irreparable injury or threatened loss or destruction." *Macon Lumber Co. v. Bishop & Collins*, 229 F.2d 305, 307 (6th Cir. 1956). "The appointment of a receiver for a solvent going business corporation is a drastic measure which will be taken by a court of equity in the exercise of its discretion only where there is imminent danger of loss... and there is no adequate remedy at law. *Id.* While the appointment of a receiver is in the Court's discretion, it is "an extraordinary remedy that is only justified in extreme situations." *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.,* 999 F.2d 314, 316 (8th Cir.1993). A court in the Southern District of Ohio determined:

> There is no precise formula for determining when appointment is warranted; however, courts generally consider the validity of the claim by the party seeking appointment; the probability that fraudulent conduct has occurred or will occur to frustrate the claim; imminent danger that property will be concealed, lost or its value diminished; inadequacy of legal remedies; lack of less drastic equitable remedy; and the likelihood that appointment will do more good than harm. *Id.* at 316–17 (citations omitted).

*De Boer Structures (U.S.A.), Inc. v. Shaffer Tent & Awning Co.,* 187 F. Supp. 2d 910, 925 (S.D. Ohio 2001).

3

According to Plaintiffs, Defendant John Medas admits not paying Plaintiff the wages he is owed and admits failing to send Plaintiff's health insurance premiums to Plaintiff's insurer. With Defendants' insolvency becoming more evident by the day and because Defendants are under criminal investigation by the IRS, Plaintiffd move to appoint a receiver over Defendants.

Plaintiffs argue that Defendants fraudulently kept Plaintiff's insurance premiums for their own use. They also contend Defendants have several tax liens pending and are actively attempting to sell their assets. Plaintiffs argue that the applicable factors for the Court to consider all favor appointing a receiver as follows:

**Danger of loss of assets**

With at least five creditors including government agencies and two foreclosure actions pending against them, Plaintiffs contend this demonstrates the danger to the assets available to them to satisfy any potential judgment.

**Fraudulent conduct**

Defendants have already fraudulently withheld and retained monies from Plaintiff Peter Pappas intended to pay his insurance premiums. Coupled with an IRS criminal investigation, the fraud element is well supported by the evidence.

**Inadequacy of other relief**

Once the assets are gone they cannot be recovered. With all the creditors at Defendants' door the danger of lost assets is real.

**Other less drastic legal means**

All other options are at least as drastic. Injunctive relief barring any sale of assets

would be more problematic as compared to a receivership where the receiver could best determine how to preserve assets at their greatest value.

**No more harm than good**

A receiver would provide an independent business-focused assessment of the assets and the business and would safeguard the assets and administer the property.

**Likelihood of success on the merits**

Plaintiffs are likely to prevail given Medas's admissions in this case.

Plaintiffs request the appointment of Zachary Burkons as receiver because he has already presided over this businesses in a prior receivership action in Cuyahoga Court of Common Pleas and is familiar with the Defendants' businesses.

**Defendants' Opposition**

Defendants oppose the Motion, contending the prior receivership lasted only ten days before it was terminated based on Defendants' compliance. Most of the assets at issue that Plaintiffs allege are up for sale are presently "locked up" by a preferred lien position of creditor Utica Leaseco. Most of the properties at issue are not in danger of sale because they are also subject to liens by other creditors and there is no evidence of any fraudulent transfers of assets. Finally, Defendants contend failure to pay wages and forward insurance premiums is not a compelling basis for the drastic remedy of appointment of a receiver. With no evidence of future harm, of imminent sales of Defendants' assets below market value or improper transfers of assets, Defendants argue the Court should deny Plaintiff's Motion.

Having reviewed the evidence and arguments, the Court denies at this time Plaintiffs' Motion to Appoint a Receiver. Defendants represent that there are sufficient assets available

to cover the alleged debts owed Plaintiffs. (See Medas aff. ECF # 12-4 para 7.) There is conflicting evidence of the solvency of Defendants and there is no evidence that any assets have been or are in danger of being fraudulently transferred. While Defendants failure to forward insurance premiums presents a question of fraudulent conduct, that alone does not warrant the extraordinary measure of appointing a receiver over Defendants' assets. Given the liens on much of Defendants' assets by other entities, there appears little danger that these assets may be lost or sold at diminished value.

In short, the evidence as currently presented does not warrant the appointment of a receiver and the Court denies Plaintiffs' Motion.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated: January 23, 2019