# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| PETER PAPPAS, ET AL., | ) | CASE NO.1:18CV1514 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| JOHN G. MEDAS, ET AL., | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiffs' Motion to Dismiss the Counterclaim. (ECF #16). For the foregoing reasons, the Court denies Plaintiffs' Motion.

On July 3, 2018, Plaintiff Peter Pappas and his minor daughter E.P. filed their Complaint in this Court, alleging Breach of Fiduciary Duty under the Employment Retirement Income Security Act ("ERISA"), Civil RICO under 18 U.S.C. § 1964, Retaliation in violation of the Fair Labor Standards Act ("FLSA") and Ohio law, Failure to Pay Timely Wages under Ohio law, Ohio Corrupt Practices Act violation, Civil Conspiracy under Ohio law, Intentional Infliction of Emotional Distress, Fraud and Conversion in violation of Ohio law, Breach of Implied Contract, Promissory Estoppel and Unjust Enrichment against Defendants. On December 27, 2018, Defendants filed their Answer and Counterclaim. The Counterclaim is brought on behalf of Defendants GPSI Properties, LLC., FMI Products, LLC. and Fulton Properties of Ohio, LLC.

Defendants' Counterclaim alleges a single claim for Tortious Interference with Business Relations and seeks damages in the amount of $2,000,000.00.

**Background Factual Allegations of Plaintiffs' Complaint**

According to Plaintiffs' Complaint, Plaintiff Peter Pappas became General Manager of Defendant Fulton Manufacturing Industries, LLC in 2004 and later served as General Manager for the other related Defendant companies. As General Manager, Pappas reported to Defendant John G. Medas. During his employment, Pappas was covered under Defendants' group health insurance. The health plan required employees to pay a portion of their health insurance premiums. Defendants withheld the employee-owed health insurance premiums from employee paychecks. Medas and FMI Companies were responsible for sending the health insurance premiums to the health insurance provider. Sometime in 2016, Defendants stopped sending the premium payments to the insurance provider but continued withholding the premiums from employee paychecks.

Plaintiff E.P. is Peter Pappas' minor daughter who was insured under the FMI health insurance plan. E.P. suffers from severe and progressive scoliosis and in 2016 required surgery on her spine. Her surgery was scheduled for October 2016 but in September 2016 Pappas discovered his health insurance had been cancelled because Defendants stopped paying the premiums. As a result E.P.'s surgery was delayed until 2017.

In 2017, Defendants fell behind in paying their employees. When Pappas complained, Medas fired him.

**Factual Allegations of Counterclaim**

According to Defendants' Counterclaim, Defendants are all Ohio limited liability

companies with GPSI providing equipment and tooling for the manufacture of electrical terminals used primarily in cars and FMI using the equipment and tooling of GPSI to produce electrical terminals. Plaintiff Peter Pappas was employed by Defendant FMI as an Engineering Manager. In 2017 Pappas was employed by FMI as its General Manager.

In February of 2018, GPSI received an offer to purchase some of its equipment and tooling for Connector ID, LLC., which was operated by Jim Pasquale. Around this time, GPSI's President, John Medas, became aware that Pappas was failing to perform his duties as Manager by failing to order raw material to satisfy customer orders, failing to respond to customer quote requests and knowingly processing customer orders at prices below the correct pricing. According to Defendants, Pappas was undermining FMI's business by creating losses that would negatively impact the value of FMI's business assets, in particular the terminal product line. This was done to interfere with the potential sale to Connector ID, LLC. at a fair price.

Pappas informed Medas he was quitting FMI on October 30, 2017. On November 8, 2018, Pappas asked Medas to be reinstated as an employee of FMI. Medas agreed and Pappas returned to work at FMI through February 17, 2018, when Pappas was discharged for threatening Medas and for his continued efforts to undermine the business of FMI. Subsequently, Pappas, in concert with Pasquale, attempted to purchase the same GPSI assets that were the subject of the potential sale between GPSI and Connector ID, LLC. The offer was rejected and Pappas made a number of allegations against Defendants in an affidavit to have a receiver appointed. He then attempted to purchase the same assets of FMI. Defendants allege these acts constitute tortious interference.

**LAW AND ANALYSIS**

**Standard of Review for Fed.R.Civ.P. 12(b)(6)**

In deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). The court need not, however, accept conclusions of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic v.*] *Twombly*, 550 U.S. 544, 127 S.Ct. 1955 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-Defendant-unlawfully-harmed-me accusation. *Id.* at 555. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a Defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir.2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir.2007)).

The Court should disregard conclusory allegations, including legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555; *J & J Sports Prods. v. Kennedy*,

4

No. 1:10CV2740, 2011 U.S. Dist. LEXIS 154644, *4 (N.D.Ohio Nov. 3, 2011).

The pleading does not have to demonstrate probability; rather, "just enough factual information to create an expectation that discovery will uncover evidence supporting the claim." *Haber v. Rabin*, No. 1:16CV546, 2016 WL 3217869, at *3 (N.D.Ohio Jun.10, 2016), citing *Twombly*, 550 U.S. at 556.

**<u>Plaintiffs' Motion to Dismiss</u>**

According to their Motion, Plaintiffs argue Defendants' Counterclaim fails to state a claim upon which relief may be granted because it fails to adequately plead causation and specific facts showing Pappas caused a third party not to contract with Defendants under the *Twombly/Iqbal* pleading standard. Plaintiffs further contend Defendants' Counterclaim fails to sufficiently plead damages. Furthermore, Plaintiffs contend the Counterclaim cannot survive because its based on testimony Pappas gave in another court proceeding and that testimony is protected by absolute immunity. Finally, the Counterclaim is asserted against both Plaintiffs but there are no allegations of wrongdoing against Plaintiffs' minor daughter E.P. Therefore, the claim against E.P. must be dismissed.

**<u>Defendants' Opposition</u>**

Defendants oppose Plaintiffs' Motion, in part, as it pertains to Peter but Defendants' concede that there is no Counterclaim against E.P. Defendants have filed a notice of dismissal of their Counterclaim against E.P.

According to Defendants, their Counterclaim pleads sufficient facts to satisfy the *Twombly/Iqbal* standard of pleading. These facts include the following: that Pappas caused Connector ID, LLC. to discontinue its purchase of GPSI's connector product line until its

value was reduced by the intentional acts of Pappas. These acts reduced the value so that Pappas, acting in conjunction with Connector, could purchase it at a reduced rate.

Furthermore, Defendants' claim that Pappas's conduct resulted in losses to Defendants of $2,000,000.00 is not a pleading issue but instead presents a fact question that is to be proven at trial. Finally, Defendants contend their allegations do not rely on the statements made by Pappas in the affidavit, thus, whether those statements are subject to absolute immunity is not dispositive of the claim because the allegations set forth sufficient facts supporting a tortious interference with business relations claim.

**Law and Analysis**

"Ohio law recognizes causes of action for both tortious interference with a business relationship and tortious interference with contract rights." *Super Sulky, Inc. v. U.S. Trotting Ass'n,* 174 F.3d 733, 741 (6th Cir. 1999) citing *A & B–Abell Elevator Co., Inc. v. Columbus/Central Ohio Bldg. & Constr. Trades Council,* 73 Ohio St.3d 1, 651 N.E.2d 1283, 1294 (1995). "They differ only in that the former tort does not require proof of a contractual relationship." *Super Sulky,* 174 F.3d at 741. "The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *Id.* The elements of a claim for tortious interference with business relations are: "(1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Horter Inv. Mgmt., LLC v. Cutter,* 257 F. Supp. 3d 892, 923–24 (S.D. Ohio 2017) citing *Ginn v. Stonecreek*

*Dental Care*, 30 N.E.3d 1034, 1039 (Ohio Ct. App. 12 Dist. 2015).

Having reviewed the Motion, Opposition and Reply along with the relevant pleadings, the Court denies Plaintiffs' Motion. Defendants' Counterclaim asserts sufficient facts to satisfy the *Twombly/Iqbal* plausibility standard and provides Plaintiffs sufficient facts to defend the claim. Defendants have asserted that they were negotiating a contract for sale of GPSI equipment and tooling, that Pappas knew of the potential sale and was actively and intentionally creating losses and reducing the value of these assets while working in concert with the purchasing company to obtain the assets at a lower value to the detriment of Defendants, resulting in $2,000,000.00 in losses. These facts allege more than merely a recitation of the elements of a tortious interference claim and provide sufficient notice of the allegations to survive a motion to dismiss. Although the Counterclaim asserts minimal facts, these facts as recited above are sufficient for a jury to find that Pappas intentionally worked against his employer to prevent a sale and thus, Defendants have established a tortious interference claim under Ohio law and the Court denies Plaintiffs' Motion.

IT IS SO ORDERED.

                                                  s/ Christopher A. Boyko
                                                  CHRISTOPHER A. BOYKO
                                                  United States District Judge

Dated: June 24, 2019